# UNITED STATES DISTRICT COURT
## for the
## SOUTHERN DISTRICT OF FLORIDA
## CIVIL DIVISION

**Case #:** 23-cv-24252-KMW

**DEMAND FOR JURY TRIAL**

**EARL TAKEFMAN**, an individual,

                      **Plaintiff,**

v.

**THE PICKLEBALL CLUB LLC** and

**MATTHEW GORDON**

                      **Defendants**

_____/

FILED BY _____ D.C.

NOV 07 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT

**COMES NOW Earl Takefman** ('Plaintiff' or 'Earl'), as a pro se Plaintiff, who files this Complaint against Defendants, (a) **The Pickleball Club LLC** ('TPC' or the 'Company') and (b) its Co-Founder and senior executive **Matthew Gordon** ('Matt'), the Company's Chief Financial Officer and General Counsel.

This is a case regarding Defendants' Defamation (Libel Per Se) of Plaintiff in an email to over 160 shareholders of the Company.

1

## THE PARTIES

1.  **Earl Takefman ('Earl' or 'Plaintiff')** – is an individual, who is 73 years old and a citizen of Canada, as well as a lawful permanent resident of the United States since 2015, residing at 851 NE 1st Avenue, Suite 2710, Miami, FL 33132. Earl was a former chief executive of three public companies. Earl entered into an Independent Contractor Agreement with TPC on January 23, 2023, and was terminated on July 10, 2023.

2.  **The Pickleball Club LLC ('TPC' or the 'Company')** – is a limited liability company with a head office at 1195 Sarasota Center Blvd, Sarasota, FL 34240. As stated in the Company's Investor's Memorandum, the Pickleball Club LLC's, mission is to be the premier developer and operator of private member pickleball clubs in the United States. TPC opened its first club in Sarasota on May 2, 2023.

3.  **Brian McCarthy ('Brian')** – is TPC's Chief Executive Officer, a Co-Founder and the Company's largest shareholder. As described in the Company's Investor's Memorandum, TPC is led by co-founder, retired, Rear Admiral Brian McCarthy USN, who is a Sarasota resident with a long and distinguished career. Admiral McCarthy earned a BS in Engineering Science from Oakland University and an MBA from Harvard University.

4.  **Matt Gordon ('Matt')** – is TPC's Chief Financial Officer, General Counsel, Co-Founder and second largest shareholder who lives in New York and is about to move to New England. As described in the Company's Investor Memorandum, Matt is an attorney and investment banker with over 20 years of experience. Mr. Gordon is a licensed attorney in New York, having practiced mergers and acquisitions law at Fried Frank and Sullivan & Cromwell. Mr. Gordon received his B.S. in Policy Analysis from Cornell University and his J.D., cum laude, from the University of Pennsylvania School of Law.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to U.S.C. 1332(a) as Matt is a citizen of a different state, and the value of the matter exceeds $75,000.

6. Venue is proper in this judicial district as Plaintiff is a Florida resident, and The Pickleball Club LLC, is a Florida company headquartered in Sarasota, FL.

## BACKGROUND

7. Plaintiff was employed by the Company in January 2023 as its Vice-President of Business Development, to help locate land sites to build clubs in southeastern Florida and to raise both debt and equity to help finance the clubs, which typically cost $12 to $15 million each.

8. Plaintiff was terminated by Matt on July 6th, 2023, because the parties could not agree on terms of their relationship going forward, and Plaintiff's belief that the investor documentation that Matt had prepared for the upcoming Round D[1] investment was not truthful and had greatly exaggerated forecasts that could not be justified.

9. The parties agreed that neither would be bound by a non-disparagement obligation after the termination.

## THE PERIOD AFTER PLAINTIFF'S TERMINATION

10. During his employment, the Plaintiff had convinced 3 investors to invest a total of $1,300,000 in the previous Round C investment round, which closed in May/June

---

[1] Round D refers to the Company's 5th attempt to raise money after its Seed Round and A, B, and C rounds.

2023, just as the Company's first club was opening and the Company was transitioning from a pre-revenue company to an operating company.

11. Plaintiff believed that these investors, and other shareholders of the Company, had been fraudulently induced with blatant and deliberately fraudulent misrepresentations by Matt, and his co-founder Brian.

12. Matt, and his other Vice-President of Business Development, Chris Foster, regularly lied and misled potential new investors with untruthful and exaggerated claims regarding the Company's opportunities.

13. For example, on September 28, 2023, Matt sent an e-mail to the shareholders, with the subject line 'Interim Shareholder Update', and indicated to the shareholders that a private equity firm which had over $30 billion in capital had *"taken a position"* in the Company; a significant accomplishment that would entice new and existing investors to invest in the Company, given the perceived sophistication of a large private equity investment company.

14. This was a total lie in that no private equity firm decided to take a position. In fact, an individual employee of a large private equity firm decided to invest, not the private equity company itself.

15. Yet another example of the lies used to attract investors, Chris Foster, who was already a large Company shareholder, on July 25th, 2023, sent out an email to all investors and potential investors advising them that the Company's first club had opened and that they had exceeded all initial expectations.

16. This was also a total lie, as the opening membership was dismally below the expected membership that was expected by new investors.

4

17. Plaintiff felt that he owed those that he had convinced to invest in the Company, based upon the investor information created and supplied by Matt, a telephone call to offer his opinion about the future of the Company once he left the Company.

18. Plaintiff advised them that it was his opinion that the Company did not have a viable and sustainable business model, and that Plaintiff felt that they would lose their entire investment, as he opined that the forecasts created by Matt were unattainable and significantly exaggerated.

19. Plaintiff offered great detail, using publicly available information published by Matt, to explain his reasoning, and he advised both Matt and Brian why he felt the information provided to shareholders and new investors was exaggerated and untruthful, and in some cases fraudulent.

20. Plaintiff also advised these shareholders of Matt's lies and indicated that he did not feel that Matt was competent, as either the Company's CFO or General Counsel, based upon Plaintiff's firsthand experiences.

## MATT DEFAMES PLAINTIFF

21. Shortly after Matt found out that a shareholder had forwarded his 'Interim Shareholder Update' to Plaintiff, even though Matt knew that Plaintiff only had a relationship with 3 shareholders, Matt sent an email to <u>all the Company's 160+ shareholders</u> defaming Plaintiff.

22. Plaintiff does not have a copy of the email, or the date it was sent, as it was read to him by a shareholder on a ZOOM call, however he is aware that Matt advised shareholders that Plaintiff was defaming the Company, providing false information, and that

the Company was considering litigation against the Plaintiff. Matt further advised shareholders not to share any information with Plaintiff and that Plaintiff's only goal was to hurt the Company.

23.	Plaintiff alleges that Matt and Brian are afraid that Plaintiff can challenge their untruthful and exaggerated comments and forecasts that would otherwise not be known to unsuspecting shareholders, and that these shareholders might initiate a shareholder lawsuit to recover their investment based upon fraudulent misrepresentations and fraudulent inducement.

24.	At all costs, since the Company is preparing for its next Round E, Matt and Brian do not want anyone discussing the forecasts they have provided to demonstrate the inherent flaws and exaggerations therein.

25.	Since the Defendants' email, and the Defendants' false and libelous claims therein, the shareholders that had previously worked with and respected Plaintiff have stopped talking to him.

## DEFENDANTS' MALICIOUS ATTEMPT TO MUZZLE PLAINTIFF

## BY DEFAMING HIM

26.	As noted previously, the parties consciously agreed that there would be no non-disparagement obligations by either party after Plaintiff's termination.

27.	The Company had originally hired Plaintiff primarily for his network of accredited nvestors who would listen to Plaintiff's opinions regarding an investment in the Company, given Plaintiff's successful business career.

6

28.	Plaintiff initially believed all the investor documents and forecasts prepared by Matt, and as such he agreed to receive a portion of his compensation in phantom stock.

29.	Plaintiff even engaged in an argument with his wife about investing a significant portion of their savings into the Company.

30.	As Plaintiff became more and more familiar with the Company, many red flags began to appear which he questioned and attempted to understand.

31.	Plaintiff believed that the forecasts prepared by Matt for the Round C money-raise were exaggerated and inaccurate, and he advised those he spoke with that the forecasts 'were dated', while awaiting the new Round D investor documents.

32.	Matt always had a seemingly reasonable response to the red flags Plaintiff raised.

33.	The release of the Round D documents confirmed many of Plaintiff's concerns about the inaccuracy of the Round C documents.

34.	Plaintiff believes that the Defendants are deathly afraid that he will alert shareholders of the lies and exaggerations in the documents, and as such they set out to discredit and defame him to the existing shareholders, in the hope that these shareholders would no longer speak with Plaintiff.

35.	The Defendant's succeeded and none of the shareholders that Plaintiff had engaged are presently speaking with Plaintiff, since the defaming email was sent by Matt.

36.	Plaintiff has been very careful and diligent not to defame the Company or release Confidential Information and has focused his comments and opinions on publicly available information.

37. For example, Plaintiff points out to those who are interested that between the Round C and Round D documents, Matt raised the forecasted sales per member by 70% from $221 per member per month to $362 per member per month, seemingly without any justification for the increase, given the dismal results from their first open club. Plaintiff suggested that the shareholder explore why Matt increased his forecast so drastically and opined that it was exaggerated only to justify the new Round D money-raise and a higher valution.

38. Plaintiff also pointed out that that Matt's comment in his interim report to shareholders email that *"the club was EBITDA positive in August"* was a total lie according to *Generally Accepted Accounting Principles* (GAAP), as Matt recorded initiation fees in one month instead of amortizing them over the year.

39. Plaintiff also pointed out that Matt has been ignoring the significant corporate overhead expenses that are being incurred and suggested that the shareholders ask questions about these expenses.

40. Plaintiff also pointed out Matt's total lie regarding a $30 billion private equity firm investing in the Company.

41. Plaintiff believes that the Defendants are desperate to silence and muzzle Plaintiff from raising important questions that their shareholders should be asking so they brazenly defamed him to silence him and his opinions and damage his reputation and credibility.

## AFTER THE DEFAMATORY EMAIL WAS SENT

42. On November 3, 2023, immediately after finding out about the email, Plaintiff sent Matt and the Company a cease-and-desist email.

43. Plaintiff offered Matt and the Company the possibility to send out an email retracting the defamatory statements to avoid litigation.

44. To the best of Plaintiff's knowledge, no such retraction was ever sent.

45. Plaintiff also offered Matt and the Company the opportunity to indicate exactly what statements Plaintiff made that they considered to be defamatory in case Matt had been misinformed by people he spoke with.

46. The Defendants did not respond.

47. As a result, Plaintiff initiated this litigation.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Defamation Libel Per Se)

48. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '47' as if fully set forth herein.

49. Defendants sent an email to all their estimated 160+ shareholders[2] defaming Plaintiff by claiming that Plaintiff had defamed the Company and provided false information to those he spoke to.[3]

50. Defendants knew that the claims they made against Plaintiff were false.

51. Defendants acted negligently and recklessly, and with knowledge that Plaintiff had not provided false or defamatory information, because they feared Plaintiff's

---

[2] Plaintiff will confirm the exact number during discovery.
[3] Plaintiff does not yet have a copy of the defaming email; however, the email was read to him.

opinions might potentially cause a shareholder revolt while they were trying to raise new capital.

52. Defendants' comments subjected Plaintiff to hatred, distrust, ridicule, contempt, and disgrace.

53. Defendants' comments injured Plaintiff in his trade and profession.

54. Defendants' comments attributed conduct, characteristics, and conditions that were incompatible with the proper exercise of a lawful business, trade, profession, or office.

55. Plaintiff has suffered damage to his reputation within the industry. In fact, all the shareholders he had solicited have since stopped talking to him, and one did not send him a business deal that they had discussed.

56. The statements by Defendants were untrue.

**WHEREFORE**, Plaintiff, demands judgment in his favor against all the Defendants for damages, prejudgment interest and the costs of this litigation, together with such other and further relief as this Court deems just and proper.

## AS FOR THE SECOND CAUSE OF ACTION

**(Injurious Falsehood)**

57. Plaintiff repeats and re-alleges each allegation set forth in Paragraphs '1' through '47' as if fully set forth herein.

58.     Defendants sent an email to all their estimated 160+ shareholders[4] defaming Plaintiff by claiming that Plaintiff had defamed the Company and provided false information to those he spoke to.[5]

59.     Defendants knew that the claims they made against Plaintiff were false.

60.     Defendants acted negligently and recklessly, and with knowledge that Plaintiff had not provided false or defamatory information.

61.     Defendants made the comments with malice and negligence to harm Plaintiff and to ensure that their shareholders would not be subjected to Plaintiff's opinions of the forecasts and opportunity provided by Matt and Brian.

62.     Defendants' comments subjected Plaintiff to hatred, distrust, ridicule, contempt, and disgrace.

63.     Defendants' comments injured Plaintiff in his trade and profession.

64.     Defendants' comments attributed conduct, characteristics, and conditions that were incompatible with the proper exercise of a lawful business, trade, profession, or office.

65.     Plaintiff has suffered damage to his reputation within the industry. In fact, all the shareholders he had solicited have since stopped talking to him.

## REQUEST FOR A JURY TRIAL

66.     Plaintiff hereby requests a jury trial on all issues raised in this complaint.

---

[4] Plaintiff will confirm the exact number during discovery.
[5] Plaintiff does not as yet have a copy of the defaming email; however, the email was read to him.

## **CONCLUSION AND PRAYER**

67.     Plaintiff was maliciously and deliberately defamed by the Defendants to cover-up their fraudulent, exaggerated, and untruthful forecasts and comments to unsuspecting shareholders and potential investors, and to stop these shareholders from finding out the truth about the investment material provided by the Defendants and Brian.

68.     Plaintiff requests that all the Defendants be cited to appear and answer, and that upon final trial of this cause, Plaintiff has judgment against Defendants in the form of the following relief, which totals more than $75,000:

(a)     Award damages to which Plaintiff shows itself justly entitled within the jurisdictional limits of this Court, which Plaintiff believes are more than $160,000, based upon a calculation of $1000 for each email sent that was defamatory.

(b)     Order Defendants to send out an email retracting the defamatory statements, which must an apology to Plaintiff.

(c)     Award the costs of court, and

(d)     Award pre-judgment and post-judgment interest, and

(e)     Award other punitive damages that the Court may determine given Defendants' egregious behavior, and

(f)     Award any other relief to which Plaintiff is justly entitled including any lawyer's fees incurred.

**Respectfully submitted on November 7, 2023**

**EARL TAKEFMAN**

Pro Se
Telephone: (786) 757-0780 or (305)-933-1757
etakefman@hotmail.com
851 NE 1st Avenue, #2710
Miami, FL 33132

By: _____
Earl Takefman